**CHRISTOPHER PRESS CONTROLLER CO. et al. v. N. S. SHERMAN MACHINE & IRON WORKS.**

No. 12474—Opinion Filed Nov. 6, 1923.

Rehearing Denied May 13, 1924.

1. **Damages — Measure — Machinery not Conforming to Contract.**

The measure of damages for failure to manufacture machinery according to contract, where the purchaser accepts and retains such machinery, is the difference between the contract price and the cost and expense of altering such machinery so as to make it conform to the contract.

2. **Trial — Directing Verdict — When Proper.**

It is not error for the court to direct a verdict where the facts are undisputed, or are of such a conclusive character that the court in its sound judicial discretion would be compelled to set aside a verdict returned in opposition to it.

(Syllabus by Dickson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Greer, County; T. P. Clay, Judge.

Action by N. S. Sherman Machine & Iron Works, a corporation, against Christopher Press Controller Company, a corporation, B. F. Van Dyke, and P. F. Slaton. Judgment for plaintiff. Defendants bring error. Affirmed.

A. R. Garrett and B. F. Van Dyke, for plaintiffs in error.

Warren K. Snyder and H. D. Henry, for defendant in error.

Opinion by DICKSON, C. This is an appeal from a judgment of the district court of Greer county, Okla., rendered on the 12th day of January, 1921, in favor of the defendant in error, plaintiff below, and against the plaintiffs in error, the defendants below. We will refer to the parties hereafter in this opinion as plaintiff and defendants as they were designated in the trial court.

The petition of the plaintiff was based on an itemized and verified account for $1,263.74. This account included various charges for merchandise, and also charges for manufacturing a number of press controllers. The first charge on the account is of August 22, 1914, and the last of March 5. 1915. These charges were against the defendant corporation; the individual defendants P. F. Slaton and B. F. Van Dyke guaranteed the payment of this account, and were sued as guarantors.

The answer of the defendants sets up in substance: (1) That they owe to the plaintiff nothing, for the reason that the account sued upon is based upon a contract to manufacture certain press controllers, and that said plaintiff manufactured such controllers in such an imperfect and unworkmanlike manner that the same were useless and without value. (2) And by way of counterclaim the defendants plead that during the summer of 1914 the defendant corporation had sold to ginners in Oklahoma and Texas a large number of their machines and that it relied upon the plaintiff to manufacture and ship to its customers substantial workable machines, but that by reason of the flimsy and unsubstantial and unfinished condition of the machines sent out by the plaintiff, it was not only put to additional expense in the sum of $1,000, but that it was unable to satisfy the buyers; that it lost 20 sales on this account, to its damage in the further sum of $2,000.

(3) That the defendant corporation had contracted to furnish 30 of the machines to a line of gins in Texas, and that the buyers of said machines rescinded and canceled their contract on account of the unfinished and flimsy machine sent to be used as a demonstrator. By reason whereof said defendant corporation averred that it had been damaged in the further sum of $3,000, and prays judgment against the plaintiff for $6,000. The plaintiff replied, denying all of the averments of the defendants' answer.

The cause was tried on the 12th day of January, 1921. The trial court ruled that the burden of proof was upon the defendants. There was no dispute as to the correctness of the account. The only contention made by the defendant corporation, on the trial was, that the machines known as press controllers, manufactured by the plaintiff were not constructed according to the contract. The material part of the contract is as follows:

"Your offer of $26.50 each for our press controller built, complete, painted and crated and delivered to Express Co. in Oklahoma City, is hereby accepted.

"The machines complete shall consist of the following named material made to patterns furnished you and now in your hands, out of good flawless castings and the parts not cast shall be made of the best grade steel, all parts to be thoroughly smoothed and painted with best black engine paint. * * *

"Terms to be each machine to be paid for as collected for but no amount shall run longer than 120 days from date of shipment."

Indorsed on this acceptance:

"This contract for 100 machines including 10 already up."

The machine in question was a patented device intended to be attached to cotton gins. The patent was owned by the defendant corporation. Prior to entering into this contract the plaintiff had constructed ten machines for the defendant corporation, from models or patterns furnished by said defendant.

The evidence conclusively shows that there was no change in the construction of the machine, except that the defendant corporation changed the pattern in some slight respect after the contract was entered into.

It would serve no good purpose to enter into a lengthy analysis of the evidence introduced in the trial court. It is sufficient

to say that only competent evidence introduced on the part of the defendant corporation tended to show that two of the machines which were delivered to it under this contract were defective, but the defendants retained the machines and paid out $3 to have one of them repaired, as it claims, so that it would conform to the contract, and another machine on which it paid out $27 to repair the defects in construction.

The defendant corporation never returned or offered to return any of the machines or to rescind the contract. There was no competent evidence offered tending to show that the defendant corporation ever lost a sale by reason of the defective construction of these machines. On the contrary, the overwhelming weight of the testimony was that the machine could not be sold to practical ginners, for the reason that they were not workable, that is, that the principle upon which they were built was wrong, and this conclusion is emphasized by the fact that the last machine was delivered to the defendants on October 2, 1914, and this case was tried on the 12th day of January, 1921, and the defendant had never had another machine built and had abandoned any further attempt to manufacture said machines.

At the conclusion of the testimony the court, upon the motion of the plaintiff, directed a verdict in favor of the plaintiff and against the defendants for $1,677.62, this being the amount of principal and interest on said account after deducting the $30 which the defendant corporation claimed to have paid out on account of imperfections in the manufacture of said machines. The verdict was accordingly rendered. A motion for a new trial was overruled. And the defendants bring the case here, and while there are several assignments of error they all go to the one question:

"That the court erred in directing a verdict for the plaintiff."

Manifestly the plaintiff's contract was complied with when it built and furnished to the defendant corporation these machines according to the pattern or model furnished it. There was no implied warranty on the part of the plaintiff that the machines were reasonably fit for the purpose for which they were intended.

The measure of damages in a case of this kind is stated in the case of Stillwell &

Bierce Mfg. Co. v. Phelps, 130 U. S. 520, 32 L. Ed. 1036:

"The rule of damages adopted by the court below. of deducting from the contract price the reasonable cost of altering the construction and setting of the machinery so as to make it conform to the contract, is the only one that would do full and exact justice to both parties and is in accordance with the decisions upon similar contracts."

See, also, Benjamin v. Hillard, 64 U. S. 149, 16 L. Ed. 518; Florida R. Co. v. Smith, 88 U. S. 255, 22 L. Ed. 513; Marsh v. McPherson, 105 U. S. 705, 26 R. Ed. 1139.

The plaintiff in this case was only required to construct the machines according to the model or pattern and of the material mentioned in the contract, and its duties in this regard were not essentially different from the duties of a building contractor, and in the case of Wiebener et al. v. Peoples, 44 Okla. 32, 142 Pac. 1036, it is stated:

"A contractor and builder who has in good faith endeavored to perform all that is required of him by the terms of his contract for the construction of a building, and has in fact substantially performed the same, is ordinarily entitled to sue upon his contract and recover the contract price, less proper deduction therefrom on account of omissions, deviations, and defects chargeable to him, especially where the owner occupies and uses such building."

This is precisely the rule adopted by the trial court. The defendant corporation had accepted the machines and upon proof tending to show that two of the machines were defectively constructed, allowed credit upon the account for the sums of money paid out in making said machines conform to the contract.

We have carefully examined the evidence in this case, and the alleged errors pointed out in the brief, and are satisfied that the trial court was right in directing the verdict. As we have seen the plaintiff in error was given credit for the sum of $30, which the evidence tends to show had been paid out in making two of the machines conform to the contract, and this is the utmost that the plaintiff in error could have been permitted to have recovered upon any theory.

We therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.