**Stephen E. STANDRING,
Plaintiff–Appellant and
Cross–Appellee,**

v.

**Frank E. STANDRING and Mountain
Armory, Defendants–Appellees and
Cross–Appellants.**

No. 89CA0456.

Colorado Court of Appeals,
Div. V.

June 7, 1990.

Fischer, Howard & Francis, Stephen E. Howard, Fort Collins, for plaintiff-appellant and cross-appellee.

March & Myatt, P.C., Ramsey D. Myatt, Fort Collins, for defendants-appellees and cross-appellants.

Opinion by Judge DAVIDSON.

In this action seeking dissolution of a partnership and distribution of partnership assets, plaintiff, Stephen E. Standring, appeals the trial court's judgment insofar as the court held that one of the two parcels of real property under consideration was not a partnership asset and insofar as it ordered that the partnership assets be distributed to the partners consistent with their ownership percentages only after paying each party the amount in his capital account. Defendants, Frank E. Standring and Mountain Armory, cross-appeal the trial court's ruling that one parcel of real property was a partnership asset. We affirm.

Defendant Frank Standring and plaintiff are father and son. Before formation of the partnership giving rise to this litigation, the father owned two parcels of real property in Fort Collins: business property at 3842 South College Avenue, and a house at 1130 West Myrtle Street. On the South College Avenue property, the father ran a sole proprietorship known as Mountain Armory, for which he constructed a new building in 1972. The construction located on the South College Avenue property was financed with loans secured by both parcels of land.

In January 1975, the father entered into a partnership agreement concerning Mountain Armory with his son, Stephen, and a third-party, Dennis Combs. The purpose of the partnership was "to engage in the purchase, sale and maintenance of firearms and ammunition and other sporting goods." Stephen and Combs were to draw salaries from the business, and each acquired five percent ownership therein. At that time, Frank Standring maintained 90% ownership.

Combs eventually withdrew from the partnership, and Frank, as a Christmas present, raised Stephen's partnership interest to 49%, effective January 1, 1979. The partnership income included money from the rental of the Myrtle Street house, and Stephen testified that his duties included maintenance of both the shop and the house. Both parcels of real property were consistently listed as assets in partnership tax returns. Although title to both parcels remained in Frank Standring's name, Stephen testified that he understood them to belong to the partnership.

In October 1982, the retail business of Mountain Armory was converted into a corporation, but the partnership was not dissolved. Stephen continued working for Mountain Armory and testified that he continued to perform the maintenance on both parcels of real property until December 1986, when, after a dispute, his father told him that he never wanted to see him again.

Stephen subsequently brought this action to dissolve the partnership in accordance with the parties' 49%/51% ownership interests. The trial court, while granting dissolution, held that the business property was a partnership asset and that the residential property was not. It then ordered that the business property be sold, that amounts from the parties' capital accounts be deducted from the proceeds, and that any remaining partnership profits be distributed 49% to Stephen and 51% to his father.

I.

Plaintiff first contends that the trial court erred in finding that the Myrtle Street property was not a partnership asset. Defendant Standring premises his allegation of error on the trial court's finding that the South College Avenue property was such an asset. We conclude that the trial court did not err in either respect.

 As pertinent here, the Uniform Partnership Act, § 7–60–108(1), C.R.S. (1986 Repl.Vol. 3A), provides that "all property originally brought into the partnership stock or subsequently acquired ... on account of the partnership is partnership property." Partners have the right to contribute any property they wish to the partnership. *In re Toomey*, 34 B.R. 35 (Bankr. Fla.1983). Whether the property has been contributed to the partnership depends on whether the parties agreed to do so. *Dot-*

*son v. Grice,* 98 N.M. 207, 647 P.2d 409 (1982); *see Wilen v. Wilen,* 61 Md.App. 337, 486 A.2d 775 (1985).

Thus, the determination whether real property purchased by and held in the name of a single partner is a private or partnership asset depends on the intent of the parties. *See In re Estate of Allen,* 239 N.W.2d 163 (Iowa 1976); *Wilen v. Wilen, supra; Emerson v. Campbell,* 32 Del. Ch. 178, 84 A.2d 148 (1951).

■ Some of the factors reflecting the parties' intent to contribute individually held property to a partnership include the language of any partnership agreement, *In re Perry's Estate,* 121 Mont. 280, 192 P.2d 532 (1948); the use of the property in the partnership business, *Swarthout v. Gentry,* 62 Cal.App.2d 68, 144 P.2d 38 (1944); *Emerson v. Campbell, supra;* the listing of the property as an asset and of its mortgage as a liability in the partnership books and tax returns, *Dotson v. Grice, supra; cf. Sneed v. Kanelos,* 150 Cal. App.2d 684, 310 P.2d 706 (1957); the construction of improvements on the property at partnership expense, *Cyrus v. Cyrus,* 242 Minn. 180, 64 N.W.2d 538 (1954); payment of taxes and insurance premiums on the property out of partnership funds, *see Gates Rubber Co. v. Williford,* 530 S.W.2d 11 (Mo.App.1975); a party's declaration of intent, such as by letter or will, accompanying his act of entering the partnership, *Cyrus v. Cyrus, supra;* and, generally, the parties' conduct with respect to the property. *Wilkinson v. United States,* 177 F.Supp. 101 (S.D.Ala.1959); *cf. McMurtray v. Hamilton,* 191 Okl. 657, 132 P.2d 335 (1942).

The intent of the parties with respect to the issue of contribution of the property is a question of fact, *see Pluth v. Smith,* 205 Cal.App.2d 818, 23 Cal.Rptr. 550 (1962); *McMurtray v. Hamilton, supra,* and unless there is no competent evidence to support it, the trier of fact's determination thereof is binding on appeal. *McMurtray v. Hamilton, supra; see Yoder v. Hooper,* 695 P.2d 1182 (Colo.App.1984), *aff'd,* 737 P.2d 852 (Colo.1987).

■ Here, the trial court, as trier of fact, considered several of the above factors in determining that the South College Avenue property had become a partnership asset and that the Myrtle Street property had not. Although a few factors pertained to both parcels—both were listed as assets on the partnership's tax returns and the income and expenses of both were "run through the partnership"—several key factors also distinguish the parties' treatment of the two properties.

Only the College Street property was used in the partnership's business, as defined by the partnership agreement. Although Stephen testified that his work in renting and performing maintenance at the Myrtle Street property evidenced that the business extended to that property, the record also reflects that Stephen's wife was paid separately for managing rental of the property and that there is conflicting evidence as to whether Stephen, in fact, spent either time or partnership money to maintain it.

Finally, the record includes notes by the attorney who simultaneously formulated the partnership modification agreement and a will for the father which indicate that the father wanted to devise the Myrtle Street property through his will, while making no provision for devising the business property. This evidence supports an inference, as made by the trial court, that the father perceived the residential and business properties differently, with the latter belonging to the partnership.

Because the trial court's finding as to the parties' intent to dedicate one and only one parcel of real property to the partnership is supported by the record, we are bound by it on appeal. *See Yoder v. Hooper, supra.*

II.

■ Plaintiff also contests the trial court's order that the parties be paid the amounts in their respective capital accounts before division of the remaining partnership assets in accordance with the parties' ownership interests. We find no error.

Section 7–60–140, C.R.S. (1986 Repl.Vol. 3A) of the Uniform Partnership Act provides the method of "settling accounts between the partners after dissolution ...

subject to any agreement to the contrary." Prior to distribution of profits to the parties in accordance with their ownership interests, the method requires payment to each partner, as a partnership liability, of his capital. *Rossi v. Rossi*, 154 Colo. 21, 389 P.2d 191 (1963); *see* § 7–60–140(1)(b)(III), C.R.S. (1986 Repl.Vol. 3A).

Contrary to plaintiff's contention, the partnership agreement here contains no provision dictating a different method of distribution. Rather, the agreement states:

> "The accounts and liabilities shall be paid in accordance with [the] Uniform Partnership Act and after payment or discharge of all the partnership's known debts and liabilities, or the provision for the payment or discharge of such liabilities, each partner shall be entitled to receive his percentage interest in the partnership's remaining assets...."

Consistent with the agreement, the trial court ordered distribution in accordance with the Uniform Partnership Act, and thus, it committed no error.

The judgment of the trial court is affirmed.

CRISWELL and DUBOFSKY, JJ., concur.